UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| Jamel Anderson, Josapha Gonzalez, Vedasto Masana, and Vincenzo Oppedisano *on behalf of themselves and others similarly situated in the proposed FLSA Collective Action,* | Case No.: |
| *Plaintiffs*, | **Jury Trial Demanded** |
| - against - | <u>**COMPLAINT**</u> |
| BSC Owner LLC, and Grenadier Realty Corp., | |
| *Defendants*. | |

-------------------------------------------------------------X

Plaintiffs Jamel Anderson ("Anderson") Josapha Gonzalez ("Gonzalez"), Vedasto Masana ("Masana"), and Vincenzo Oppedisano ("Oppedisano", and together with Anderson, the "Plaintiffs") on behalf of themselves and others similarly situated, by and through their attorneys, Levin-Epstein & Associates, P.C., upon personal knowledge as to themselves and upon information and belief as to others, brings this complaint against defendant BSC Owner LLC ("BSC"), and Grenadier Realty Corp. ("Grenadier", and with BSC, the "Defendants") and state as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this lawsuit seeking recovery, for themselves and all other similarly situated individuals, against Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and violations of Articles 6 and 19 of the New York State Labor Law ("NYLL") and their supporting New York State Department of Labor regulations.

2. Plaintiffs seek injunctive and declaratory relief and to recover unpaid overtime wages, liquidated and statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and the NYLL's Wage Theft Prevention Act ("WTPA").

1

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216 (b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367(a).

4. This Court has federal question jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because their claims arise under the FLSA.

5. Venue is proper in this District of New York under 28 U.S.C. § 1391(b) and (c), because all events relevant to this action occurred in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**PLAINTIFF JAMEL ANDERSON**

6. Plaintiff Anderson was employed as a superintendent at Defendants' residential and commercial property complex known as "Spring Creek Towers" from on or around November 2001 through and including the present date.

7. Plaintiff Anderson was employed as a non-managerial employee at Spring Creek Towers.

8. At all relevant times, Plaintiff Anderson has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINTIFF JOSAPHA GONZALEZ**

9. Plaintiff Gonzalez was employed as a porter, handyman, and superintendent at Spring Creek Towers from on or around June 1979 through and including August 24, 2022.

10. Plaintiff Gonzalez was employed as a non-managerial employee at Spring Creek Towers.

11. At all relevant times, Plaintiff Gonzalez has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINTIFF VEDASTO MASANA**

12. Plaintiff Masana was employed as a porter, handyman, and superintendent at Spring Creek Towers from on or around February 1992 through and including the present date.

13. Plaintiff Masana was employed as a non-managerial employee at Spring Creek Towers.

14. At all relevant times, Plaintiff Masana has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINTIFF VINCENZO OPPEDISANO**

15. Plaintiff Oppedisano was employed as a porter, handyman, and superintendent at Spring Creek Towers from on or around September 1988 through and including October 2022.

16. Plaintiff Oppedisano was employed as a non-managerial employee at Spring Creek Towers.

17. At all relevant times, Plaintiff Oppedisano has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**DEFENDANT BSC OWNER LLC**

18. Upon information and belief, BSC Owner LLC is a domestic limited liability company organized and existing under the laws of the State of New York.

19. Upon information and belief, BSC Owner LLC maintains its principal place of business at 1390 Pennsylvania Ave Brooklyn, NY, 11239-2103, and has a registered address for service of process at 28 Liberty St., New York, NY 10005.

20. At all times relevant to this Complaint, BSC Owner LLC (i) has had and continues

to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

21. At all times relevant to this Complaint, BSC Owner LLC was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

22. Upon information and belief, BSC Owner LLC is a property management company, that started managing Spring Creek Towers beginning on or around January 2018 through and including the present date.

23. From January 2018 through and including the present date, BSC Owner LLC was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

24. From January 2018 through and including the present date, BSC Owner LLC was Plaintiffs' employer within the meaning of the FLSA and NYLL.

25. From January 2018 through and including the present date, BSC Owner LLC possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

26. From January 2018 through and including the present date, BSC Owner LLC had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

**DEFENDANT GRENADIER REALTY CORP.**

27. Upon information and belief, Grenadier Realty Corp. is a domestic corporation organized and existing under the laws of the State of New York.

28. Upon information and belief, Grenadier Realty Corp. maintains its principal place of business, and an address for service of process, at 168 39th Street, Suite 306, Brooklyn, NY 11232.

29. At all times relevant to this Complaint, Grenadier Realty Corp. (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

30. At all times relevant to this Complaint, Grenadier Realty Corp. was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

31. Upon information and belief, Grenadier Realty Corp. is a property management company, that started managing Spring Creek Towers beginning as early as June 1979 until, on or around December 2017.

32. From June 1979 through and including December 2017, Grenadier Realty Corp. was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

33. From June 1979 through and including December 2017, Grenadier Realty Corp. was Plaintiffs' employer within the meaning of the FLSA and NYLL.

34. From June 1979 through and including December 2017, Grenadier Realty Corp.

possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

35. From June 1979 through and including December 2017, Grenadier Realty Corp. had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

## FACTUAL ALLEGATIONS

### *Factual Allegations Pertaining Specifically to Plaintiff Jamel Anderson*

36. Plaintiff Anderson was an employee of Defendants.

37. Plaintiff Anderson was employed as a superintendent at Defendants' residential and commercial property complex known as "Spring Creek Towers" from on or around November 2001 through and including the present date.

38. Plaintiff Anderson was primarily responsible for overseeing the general maintenance and repair of, *inter alia,* the following buildings at Spring Creek Towers:

    i. Building C1, located at 20 Vandalia Ave, Brooklyn, NY 11239;

    ii. Building C2, located at 50 Vandalia Ave, Brooklyn, NY 11239;

    iii. Building C4, located at 1260 Croton Loop, Brooklyn, NY 11239;

    iv. Building C5, located at 1280 Croton Loop, Brooklyn, NY 11239;

    v. Building C6, located at 1310 Pennsylvania Ave, Brooklyn, NY 11239[1];

    vi. Building C7, located at 45 Twin Pines Dr, Brooklyn, NY 11239;

    vii. Building C8, located at 605 Louisiana Ave, Brooklyn, NY 11239; and

    viii. The C Garage, located at 1245 Pennsylvania Ave, Brooklyn, NY 11239[2].

---

[1] a/k/a 1310 Granville Payne Ave, Brooklyn, NY 11239.
[2] a/k/a 1245 Granville Payne Ave, Brooklyn, NY 11239.

6

39. From approximately November 2016 through and including December 2020, Defendants paid Plaintiff Anderson $29 per hour, for all hours worked.

40. From approximately January 2021 through and including the present date, Defendants paid Plaintiff Anderson $30 per hour, for all hours worked.

***Factual Allegations Pertaining Specifically to Plaintiff Josapha Gonzalez***

41. Plaintiff Gonzalez was an employee of Defendants.

42. Plaintiff Gonzalez was employed as a porter at Spring Creek Towers from on or around June 1979 through and including December 1983.

43. Plaintiff Gonzalez was employed as a handyman at Spring Creek Towers from on or around January 1984 through and including December 1994.

44. Plaintiff Gonzalez was employed as a superintendent at Spring Creek Towers from on or around January 1995 through and including August 24, 2022.

45. Plaintiff Gonzalez was primarily responsible for overseeing the general maintenance and repair of, *inter alia,* the following buildings at Spring Creek Towers:

   i. Building G1, located at 1445 Geneva Loop, Brooklyn, NY 11239;

   ii. Building G2, located at 1425 Pennsylvania Ave, Brooklyn, NY 11239;

   iii. Building G6, located at 1455 Geneva Loop, Brooklyn, NY 11239;

   iv. Building G7, located at 1465 Geneva Loop, Brooklyn, NY 11239;

   v. Building G8;

   vi. Building G9, located on or around Pennsylvania Ave;

   vii. Building G10, located at 1475 Geneva Loop, Brooklyn, NY 11239;

   viii. Building F1, located on or around Pennsylvania Ave; and

   ix. Building F2, located on or around Freeport Loop.

46. From approximately November 2016 through and including December 2020, Defendants paid Plaintiff Gonzalez $29 per hour, for all hours worked.

47. From approximately January 2021 through and including the present date, Defendants paid Plaintiff Gonzalez $31 per hour, for all hours worked.

### *Factual Allegations Pertaining Specifically to Plaintiff Vedasto Masana*

48. Plaintiff Masana was an employee of Defendants.

49. Plaintiff Masana was employed as a porter at Spring Creek Towers from on or around February 1992 through and including December 1995.

50. Plaintiff Masana was employed as a handyman at Spring Creek Towers from on or around January 1996 through and including March 2013.

51. Plaintiff Masana was employed as a superintendent at Spring Creek Towers from on or around April 2013 through and including the present date.

52. Plaintiff Masana was primarily responsible for overseeing the general maintenance and repair of, *inter alia,* the following buildings at Spring Creek Towers:

   i. Building D5, located at 1305 Delmar Loop, Brooklyn, NY 11239;

   ii. Building D6, located at 1325 Pennsylvania Ave, Brooklyn, NY 11239;

   iii. Building E1, located at 125 Schroeders Ave, Brooklyn, NY 11239;

   iv. Building E2, located at 135 Elmira Loop, Brooklyn, NY 11239;

   v. Building E3, located at 145 Elmira Loop, Brooklyn, NY 11239;

   vi. Building G3, located at 120 Schroeders Ave, Brooklyn, NY 11239;

   vii. Building G4, located at 130 Schroeders Ave, Brooklyn, NY 11239;

   viii. Building G5, located at 160 Schroeders Ave, Brooklyn, NY 11239; and

   ix. The Spring Creek Towers Commercial Shopping Center, located at 1390 Pennsylvania Ave, Brooklyn, NY 11239.

53. From approximately November 2016 through and including December 2016, Defendants paid Plaintiff Masana $25 per hour, for all hours worked.

54. From approximately January 2017 through and including December 2017, Defendants paid Plaintiff Masana $26 per hour, for all hours worked.

55. From approximately January 2018 through and including December 2018, Defendants paid Plaintiff Masana $27 per hour, for all hours worked.

56. From approximately January 2019 through and including December 2019, Defendants paid Plaintiff Masana $28 per hour, for all hours worked.

57. From approximately January 2020 through and including December 2021, Defendants paid Plaintiff Masana $30 per hour, for all hours worked.

58. From approximately January 2022 through and including the present date, Defendants paid Plaintiff Masana $31 per hour, for all hours worked.

***Factual Allegations Pertaining Specifically to Plaintiff Vincenzo Oppedisano***

59. Plaintiff Oppedisano was an employee of Defendants.

60. Plaintiff Oppedisano was employed as a porter at Spring Creek Towers from on or around September 1988 through and including December 1999.

61. Plaintiff Oppedisano was employed as a handyman at Spring Creek Towers from on or around January 1991 through and including January 1997.

62. Plaintiff Oppedisano was employed as a superintendent at Spring Creek Towers from on or around February 1997 through and including October 2022.

63. Plaintiff Oppedisano was primarily responsible for overseeing the general maintenance and repair of, *inter alia,* the following buildings at Spring Creek Towers:

   i. Building D4, located at 1285 Delmar Loop, Brooklyn, NY 11239;

    ii.    Building D3, located at 1275 Delmar Loop, Brooklyn, NY 11239;

    iii.    Building D1, located at 1155 Pennsylvania Ave., Brooklyn, NY 11239[3];

    iv.    Building D2, located at 130 Vandalia Ave, Brooklyn, NY 11239;

    v.    Building B1, located at 180 Bethel Loop, Brooklyn, NY 11239;

    vi.    Building B3, located at 190 Bethel Loop, Brooklyn, NY 11239; and

    vii.    Building B2, located at 200 Bethel Loop, Brooklyn, NY 11239.

64. From approximately November 2016 through and including December 2016, Defendants paid Plaintiff Oppedisano $25 per hour, for all hours worked.

65. From approximately January 2017 through and including December 2017, Defendants paid Plaintiff Oppedisano $26 per hour, for all hours worked.

66. From approximately January 2018 through and including December 2018, Defendants paid Plaintiff Oppedisano $27 per hour, for all hours worked.

67. From approximately January 2019 through and including December 2019, Defendants paid Plaintiff Oppedisano $28 per hour, for all hours worked.

68. From approximately January 2020 through and including December 2021, Defendants paid Plaintiff Oppedisano $30 per hour, for all hours worked.

69. From approximately January 2022 through and including the present date, Defendants paid Plaintiff Oppedisano $31 per hour, for all hours worked.

### *Factual Allegations Pertaining Specifically to all Plaintiffs*

70. At all relevant times, Plaintiffs typically worked at Spring Creek Towers five (5) days per week, from approximately 8:00 a.m. to 4:45 p.m., with a 45-minute lunch break (*i.e.,* 8 hours per day) for a total of approximately 40 hours during each of the weeks.

---

[3] a/k/a 1155 Granville Payne Ave, Brooklyn, NY 11239.

71. However, every six (6) weeks of Plaintiffs' employment, beginning in 2015 to, through and including the present date, Plaintiffs' were required to, and did in fact, work nine (9) days straight.

72. During these workweeks, Plaintiffs typically worked at Spring Creek Towers seven (7) days per week, from approximately 8:00 a.m. to 4:45 p.m., with a 45-minute lunch break (*i.e.,* 8 hours per day) for a total of approximately 56 hours during each of the weeks.

73. Plaintiffs' responsibilities as superintendents included, *inter alia*: communicating with tenants regarding repairs, coordinating maintenance and repairs with Defendants' porters, coordinating maintenance and repairs with Defendants' handymen, ensuring the collection of garbage and recycling, ensuring sidewalks would be swept, overseeing the cleanliness of the buildings' hallways and common areas, changing lightbulbs, painting, plumbing, purchasing supplies, repairing bathroom faucets and fixtures, repairing kitchen faucets and fixtures, repairing appliances, communicating with contractors and other building employees, shoveling snow, and generally serving as the first point of contact for resident service requests.

74. Plaintiffs regularly handled goods in interstate commerce, such as cleaning supplies, and garbage bags which were necessary to perform their duties as superintendents.

75. Plaintiffs' work duties required neither discretion nor independent judgment.

76. Plaintiffs were required to work in excess of forty (40) hours per week, but never received an overtime premium of one and one-half times their regular rate of pay for those hours.

77. No notification, either in the form of posted notices, or other means, was ever given to Plaintiffs regarding wages are required under the FLSA or NYLL.

78. Defendants did not provide Plaintiffs a statement of wages, as required by NYLL 195(3).

79. Defendants did not give any notice to Plaintiffs of their rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

80. At all relevant times, Defendants did not pay Plaintiffs at the rate of one and one-half times their hourly wage rate for hours worked in excess of forty per workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

81. Plaintiffs brings the First Claim for Relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. §216(b), on behalf of all non-exempt persons (including but not limited to superintendents) employed by Defendants on or after the date that is three years before filing of the Complaint in this case, as defined herein ("FLSA Collective Plaintiffs").

82. At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines and rules willfully failing and refusing to pay them at the legally required overtime wage for all hours worked in excess of forty hours per work week. These claims of the Plaintiffs are essentially the same as those of the FLSA Collective Plaintiffs.

83. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to under FLSA §16(b), 29 U.S.C. §216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and others related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

84. Plaintiffs reserve the right to re-define the FLSA Collective Plaintiffs prior to notice or collective certification, and thereafter, as necessary.

## FIRST CLAIM
### (FLSA – Unpaid Overtime Wages, 29 U.S.C. §§ 201 *et seq*.)

85. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

86. At all relevant times to this action, Plaintiffs are covered, non-exempt employees within the meaning of the FLSA.

87. Defendants were required to pay Plaintiffs one and one-half (1 1/2) times the regular rate at which Plaintiffs were employed for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

88. Defendants failed to pay Plaintiffs the overtime wages to which they are entitled under the FLSA.

89. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

90. Due to Defendants' willful violations of the FLSA, Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

## SECOND CLAIM
### (NYLL – Unpaid Overtime Wages)

91. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

92. Plaintiffs are covered, non-exempt employees within the meaning of the NYLL and supporting New York Department of Labor ("NYDOL") Regulations.

13

93. Under the NYLL and supporting NYDOL Regulations, Defendants are required to pay Plaintiffs one and one half times the regular rate of pay, which shall not be less than the minimum wage, for all hours they worked in excess of forty.

94. Defendants failed to pay Plaintiffs the overtime wages to which they are entitled under the NYLL.

95. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

96. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

## THIRD CLAIM
### (NYLL WTPA– Failure to Provide Wage Notices)

97. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

98. The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire.

99. In violation of NYLL §195 (1), Defendants failed to furnish to Plaintiffs at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer, and anything otherwise required by law.

100. Due to Defendants' violations of NYLL §195 (1), Plaintiffs are entitled to recover their liquidated damages, reasonable attorney's fees and cost and disbursement of the action, pursuant to the NYLL §198 (1-b).

## FOURTH CLAIM
### (Violation of the Wage Statement Provisions of the NYLL)

101. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

102. With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each of the following the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the number of regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

103. As a result of Defendant's violation of the WTPA, Plaintiffs are entitled to damages of at least $150 per week during which the violations occurred.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment:

a. authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as nonexempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b. certification of this case as a collective action pursuant to the FLSA;

c. issuance of notice pursuant to 29 U.S.C. § 216(b), to all similarly situated members

  of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the FLSA Collective Plaintiffs;

d. declaring that Defendants violated the overtime wage provisions of the FLSA, the NYLL and the NYDOL regulations;

e. declaring that Defendants violated the notice statement pay provisions of the NYLL and WTPA;

f. awarding Plaintiffs unpaid overtime wages;

g. awarding Plaintiffs liquidated damages in an amount equal to the total amount of wages found to be due;

h. awarding unpaid wages under the NYLL and the New York State contract law;

i. awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish accurate wage notice pursuant to the NYLL;

j. rewarding Plaintiffs pre- and post-judgment interest under the NYLL;

k. awarding Plaintiffs reasonable attorneys' fees and the costs and disbursements of this action; and

l. Such other relief as this Court deems just and proper.

Dated: New York, New York
   November 30, 2022

                    Respectfully submitted,

                    By: /s/ Joshua Levin-Epstein
                       Joshua Levin-Epstein
                       Jason Mizrahi
                       Levin-Epstein & Associates, P.C.
                       60 East 42nd Street, Suite 4700
                       New York, New York 10165
                       Tel: (212) 792-0046
                       Email: Joshua@levinepstein.com
                       *Attorneys for the Plaintiffs and proposed FLSA Collection Action Plaintiffs*